UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NOE ARCAUTE,

              Petitioner,          Case No. 1:16-cv-1112

v.                                           Honorable Paul L. Maloney

SHANE JACKSON,

              Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Noe Arcaute is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. An Ingham County Circuit Court jury found Petitioner guilty of one count of second-degree murder, Mich. Comp. Laws § 750.317, one count of carrying a concealed weapon, Mich. Comp. Laws § 750.227, and one count of possessing a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. On November 20, 2013, the court imposed respective prison terms of eighteen years and nine months to sixty years, one year and six months to five years, and two years.

On September 6, 2016,[1] Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

> I. [PETITIONER'S] CONVICTION FOR SECOND-DEGREE MURDER FAILS THE SUFFICIENCY OF EVIDENCE TEST BECAUSE THE PROSECUTION DID NOT ESTA[B]LISH THAT [PETITIONER] INTENDED TO AID OR ABET A SECOND-DEGREE MURDER. REVERSAL AND VACATION OF THAT CONVICTION IS WARRANTED US CONST. AM XIV.
>
> II. THE CIRCUIT COURT ERRED WHEN IT DENIED [PETITIONER'S] REQUEST FOR A DOWNWARD DEPARTURE FROM THE SENTENCING GUIDELINES. [PETITIONER] WAS SHOT DURING THIS INCIDENT AND REMAINS PARALYZED. THIS OBJECTIVE AND VERIFIABLE FACT IS NOT ACCOUNTED FOR WITHIN THE GUIDELINES.

(Pet., ECF No. 1, PageID.4-5; ECF No. 1-1, PageID.10, 14.) Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because Ground I is meritless and Ground II is either noncognizable or meritless.

Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are either noncognizable or meritless. Accordingly, I recommend that the petition be denied.

---

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

**Discussion**

I. <u>Factual allegations</u>

Petitioner's convictions arose out of a shooting at a Lansing convenience store on January 1, 2013, at 2:00 a.m. Petitioner initially was charged with one count of open murder, three counts of assault with intent to commit murder, one count of carrying a concealed weapon, and one count of felony firearm. Following a preliminary examination held on March 21, 2013, Petitioner was bound over on the murder, carrying-concealed, and felony-firearm charges. The district court dismissed the charges of assault with intent to murder. (Prelim. Exam. Tr., ECF No. 6-2, PageID.161.)

Petitioner and his co-defendant, Delon Martell Miller, were tried before a jury over the course of eight days. I have reviewed the entire transcript and find that the summary of facts recited by the Michigan Court of Appeals reasonably reflects the testimony at trial:

> This case stems from an altercation at the "Save On Market" convenience store on New Year's Day, during which several men were shot, including Nicholas Jones who was mortally wounded. Three groups of men were involved, each of which entered the store around 2:00 a.m. The first group to arrive intended to buy liquor after leaving a house party. Soon after the second group arrived, Keith Houston, a member of the second group, had a discussion with Delvanta Mitchell, a member of the first group. Keith Houston testified that while holding a gun, he told Mitchell that he did not like one of Mitchell's acquaintances and that he was going to shoot the acquaintance when and where he found him. Mitchell denied that Keith Houston showed him a gun or threatened to kill his friend. Group three, which included defendant and codefendant Delon Miller, entered the store last. Charles Mattox, a member of group one, testified that he and defendant exchanged dirty looks after which defendant said that he "had a Magic Johnson for

3

anybody," which Mattox understood to mean that defendant was armed with a gun and clip holding 32 bullets.

Soon thereafter, a fight broke out. One of the combatants, Alim Muhammad, testified that while he was being hit by multiple people, he pulled out a knife and started "stabbing air" with his eyes "basically closed." Keith Houston testified that he was standing near the door when the fight began, with his back to the fight. He said he turned around when he heard a commotion and took a couple steps closer to watch. As he was approaching the fight, Keith Houston testified, he saw Miller "come back shooting" after "[a] couple, like seconds." Keith Houston said he was shot while trying to run away.

Jerome Houston testified that he was standing by the cash register when the fight broke out, and "then all of a sudden a gun came up" and he heard shots fired. Jerome Houston said Miller shot first, aiming at Tyrazes Brown and Shawon Calvin, and fired two shots before Brown pulled out a gun and returned fire. Jerome Houston estimated that Miller and Brown each fired a total of five or six rounds while inside the store. Jerome Houston said Miller approached him, pointed his weapon at him and pulled the trigger, but that defendant's gun "didn't go off anymore." Jerome said defendant then bent over near the victim, who was shot and lying on the ground, and said, "they shouldn't have jumped on me" and "sorry." Jerome Houston said he then went back to his car while defendant and another man exchanged fire by their respective vehicles. Medical evidence established that the victim was shot on the left side of his chest, and that the bullet entered his body "closer to his back than to his front." Medical evidence also established that Brown sustained gunshot wounds to the chest and arm, Terreon Smith was wounded in his leg and buttocks, and Keith Houston had a gunshot wound to his leg.

Several residents of a house located next to the store testified to what happened outside of the store. One witness said she saw a group of people running from the store after hearing two gunshots. The witness testified that two men then exited the store, with the bigger man exchanging gunfire with someone else while he and his companion were standing behind a van. Three witnesses testified that a third man approached the smaller of the two by the van and shot him in the back. The smaller man was defendant.

Portions of the video surveillance footage from the store were played during trial, with Lansing Police Department Detective Mark Lewandowsky providing narration. The officer testified that he spent

4

>    30 to 40 hours reviewing the videos and could identify the people shown in the videos based on his investigation of the case and personal interactions with many of them. In one segment taken from inside the store, Lewandowsky testified, defendant can be seen with his hand on a long, metallic object tucked horizontally in his waistband, which appeared to Lewandowsky as the handle of a pistol and a magazine. Lewandowsky also testified that the video showed Miller separating himself from the "fighting mass of people" and then he and defendant going down to the end of an aisle, where defendant handed something to Miller. According to Lewandowsky, the footage shows Miller going back to the front of the store and raising his arms. Seconds later, the officer explained, the victim is seen falling to the floor. Lewandowsky further testified that Miller is seen a few seconds later holding a gun with an "extra long magazine protruding from the bottom of the gun" and Brown attempting to shoot Miller. According to Lewandowsky, defendant is observed hiding by a cooler while these shots were fired. Lewandowsky said exterior video footage showed five people with guns, including Miller.

(Mich. Ct. App. Op., ECF No. 6-24, PageID.596-597.) Despite the general accuracy of the court of appeals' summary, the testimony of the many witnesses was not entirely consistent. I will discuss additional facts, as necessary, in relation to Petitioner's claims.[2]

After deliberating for more than a day, the jury found Petitioner guilty of one count each of second-degree murder, carrying a concealed weapon, and felony firearm. The jury found codefendant Miller guilty of one count of first-degree murder, four

---

[2] The Court will reference the trial transcripts as follows:
Trial Transcript for September 30, 2013:   (T. Tr. I, ECF No. 6-5, PageID.___);
Trial Transcript for October 1, 2013:   (T. Tr. II, ECF No. 6-6, PageID.___);
Trial Transcript for October 3, 2013:   (T. Tr. III, ECF No. 6-7, PageID.___);
Trial Transcript for October 4, 2013:   (T. Tr. IV, ECF No. 6-8, PageID.___);
Trial Transcript for October 7, 2013:   (T. Tr. V, ECF No. 6-9, PageID.___);
Trial Transcript for October 8, 2013:   (T. Tr. VI, ECF No. 6-10, PageID.___);
Trial Transcript for October 10, 2013:  (T. Tr. VII, ECF No. 6-11, PageID.___);
Trial Transcript for October 11, 2013:  (T. Tr. VIII, ECF No. 6-12, PageID.___).

counts of assault with intent to murder, and one count of felony firearm, but not guilty of carrying a concealed weapon. (T. Tr. VIII, ECF No. 6-12, PageID.589.)

On November 20, 2013, the court held a sentencing hearing. Petitioner, through counsel, argued for leniency on the ground that he had been rendered permanently paralyzed. (Sentencing Hr'g, ECF No. 6-13, PageID.594.) The trial court sentenced Petitioner at the low end of the sentencing guidelines to imprisonment for 225 to 720 months on the murder conviction, eighteen to sixty months on the carrying-concealed conviction, and 24 months on the felony-firearm conviction, to be served consecutively to the sentence on the murder conviction. The sentencing court expressly indicated that its sentence reflected consideration of Petitioner's injuries. (*Id.*, PageID.595.)

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals, raising the same two issues presented in his habeas petition. In an unpublished opinion issued on April 21, 2015, the court of appeals rejected both appellate grounds and affirmed the convictions and sentences. (Mich. Ct. App. Op., ECF No. 6-14, PageID.596-600.) Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same two issues. The supreme court denied leave to appeal on September 29, 2015. Petitioner timely filed his habeas action on September 6, 2016.

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535

U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication

on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.   Ground I:  Sufficiency of the Evidence

In his first ground for habeas relief, Petitioner contends that the evidence was insufficient to establish that he intended to aid or abet a second-degree murder. He makes three arguments about the sufficiency of the evidence. First, he contends that, under the circumstances of the case, Miller was acting in self-defense, and therefore was justified in shooting. As a consequence, Petitioner asserts, he aided and abetted only a justified killing. Second, Petitioner argues that Petitioner's sole act of giving a gun to Miller before hiding from the melee is insufficient to prove that he aided and abetted Miller in the murder. Third, he argues that the evidence was insufficient to prove that he possessed the requisite knowledge and intent at the time he gave aid and encouragement.

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*

Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as

established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals thoroughly considered and rejected Petitioner's sufficiency claims. It concluded, in relevant part as follows:

> Defendant first argues that his conviction under an aiding and abetting theory cannot stand because there was insufficient evidence to convict Miller of second-degree murder, explaining that it is not clear whether Miller killed Jones without justification or excuse.[1] We conclude that there was ample evidence supporting the finding that Miller shot Jones without justification or excuse.
>
> Our Supreme Court discussed justifiable homicide in *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002), stating as follows:
>
>> As a general rule, the killing of another person in self-defense by one who is free from fault is justifiable

10

> homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force. The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat.

There is no evidence supporting defendant's position that Miller reasonably believed he needed to use deadly force to avoid imminent danger of death or great bodily harm. Although the evidence showed that Miller was punched during a brawl between several men who were carrying guns, video surveillance footage showed that Miller and defendant were able to remove themselves from the brawl and retreated to safety behind the end of an aisle inside the store. At that point, there was no evidence suggesting that Miller or defendant was in imminent danger of any harm. To the contrary, Miller left this place of safety and returned to the brawl.

Moreover, there was no evidence that Miller could have reasonably believed he faced death or great bodily harm, or that using deadly force was necessary. The evidence suggested that Jones was armed while inside the store, and although the testimony showed that other men in the store possessed guns, there was no evidence that these guns were displayed to Miller or defendant in a threatening manner before Miller opened fire. There was no evidence that any shots were fired until Miller returned to the brawl—after retreating—and opened fire.

Moreover, Miller's malice is evident from the manner in which he opened fire. Although defendant contends that Miller shot Jones and others in self-defense, the physician who examined Jones after the shooting opined that Jones was mortally wounded from a bullet that entered his body "closer to his back than to his front." Further, testimonial, medical, and video evidence showed that Miller shot his victims as they were attempting to run away.

Additionally, evidence regarding statements Miller made after shooting Jones further indicate that he shot Jones and others in retaliation for being punched, rather than in self-defense. Indeed, Miller was heard telling Jones after shooting him, "they shouldn't have jumped on me." Additionally, the jury heard evidence that Miller gave two statements to a police detective after the shooting, during which he

11

concealed his involvement in the shootings and never once stated that he feared for his life or shot someone in self-defense. In sum, there was an absence of evidence that Miller shot Jones with justification or excuse and an abundance of evidence that he did so with malice.

Alternatively, defendant argues that there was insufficient evidence that he aided and abetted a second-degree murder because he did not aid or encourage the shooting and could not have reasonably known that Miller would use his gun to shoot anyone. This argument is without merit. First and foremost, video evidence showed defendant handing Miller the murder weapon—without hesitation—moments after Miller had been punched, and after previously announcing that he "had a Magic Johnson for anybody," meaning a gun and clip holding 32 bullets. The video evidence also showed defendant hiding for some 25 seconds after handing Miller his weapon, which supports the conclusion that he knew Miller planned to use the weapon.

> [1] Miller was actually convicted of first-degree premeditated murder, MCL 750.316(1)(a).

(Mich. Ct. App. Op., ECF No. 6-14, PageID.598-99.)

Although the court of appeals did not cite *Jackson*, 443 U.S. 307, or any other federal authority, the standard it applied was identical to the *Jackson* rule. Moreover, at least one case cited by the court of appeals expressly invoked *Jackson*. *See People v. Nowack*, 614 N.W.2d 78, 81 (Mich. 2000) (citing *Jackson*, 443 U.S. 307). The remaining cases cited by the court of appeals rely on other Michigan Supreme Court decisions that adopted the *Jackson* standard. *See, e.g., People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (citing *People v. Wolfe*, 489 N.W.2d 748, 750-51 (Mich. 1992) (citing *Jackson*, 443 U.S. 307, for the applicable due process standard)). Accordingly, the court of appeals applied the correct constitutional standard.

### A.     Self-defense

In his first argument, Petitioner contends that the evidence was insufficient to prove that Miller had not acted in self-defense. He therefore argues that he could not have aided and abetted murder, because the shooting was justified.

Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree*, 788 N.W.2d 399, 405 (Mich. 2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 815 N.W.2d 85,101 n.76 (Mich. 2012) (quoting *Dupree*, 788 N.W.2d at 405 n.11). Although a prosecutor is required to disprove a claim of self-defense under state law, *People v. Watts*, 232 N.W.2d 396, 398 (Mich. Ct. App. 1975), "[p]roof of the nonexistence of . . . affirmative defenses has never been constitutionally required," *Smith v. United States*, 133 S.Ct. 714, 719 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). Thus, the Constitution did not require the prosecution in Petitioner's case to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt."); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987) (rejecting claim that putting burden on defendant to prove self-defense is unconstitutional); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law, citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)). Put another way, "the due

process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999).

Petitioner does not challenge the sufficiency of the evidence in support of the essential state law elements of the crimes of which he was convicted; rather, "he has only faulted the jury's refusal to credit his proffered affirmative excuse or justification" for his conduct. *Id.* Thus, his claim that the prosecutor failed to disprove his affirmative defense is merely a state-law claim that is not cognizable on habeas review. *Id.*; *Redman*, 858 F.2d at 1200.

Even were the Court to consider the evidence supporting self-defense, it is apparent that the court of appeals reached the proper result on the record. Despite the fact that Miller had been punched during the brawl, neither he nor Petitioner was in any danger from the fight at the time Petitioner gave Miller the gun. And despite the fact that other individuals present at the store were subsequently shown to possess weapons, no evidence indicated that any person had drawn a weapon or that either Miller or Petitioner was aware of such weapons at the time Petitioner handed Miller the gun. Instead, the evidence showed that Petitioner and Miller had moved away from the brawl to a place of safety before Petitioner, without hesitation, handed the gun to Miller.

Moreover, Petitioner himself was the only individual who had flashed a gun and suggested that he might use it. Under these circumstances and for the reasons

fully analyzed by the Michigan Court of Appeals, Petitioner's first argument is unsupported by the record.

In sum, Petitioner's first sufficiency claim is both noncognizable on habeas review and frivolous on the facts of the case.

### B. Acts Were Insufficient to Amount to Aiding and Abetting

In his second claim concerning the sufficiency of the evidence, Petitioner asserts that his single act of providing a gun to Miller was insufficient to constitute aiding and abetting. In his third claim, Petitioner argues that the evidence did not support a finding that Petitioner possessed the requisite knowledge and intent at the time he provided Miller with the gun.

As the Michigan Court of Appeals recognized, the standard for proving aiding and abetting under state law contains three elements:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.

*People v. Robinson*, 715 N.W.2d 44, 47-48 (Mich. 2006) (quoting *People v. Moore*, 679 N.W.2d 41, 49 (Mich. 2004) (quoting *Carines*, 679 N.W.2d at 141)). To the extent that Petitioner challenges the standard itself, his claim is not cognizable. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit

15

repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

Moreover, as the court of appeals discussed, the videotape showed that, after the fight began and Miller was struck, Petitioner and Miller moved away from the brawl. The fact that Petitioner gave Miller the gun under these circumstances was more than sufficient to demonstrate that he aided and abetted the shooting with the knowledge that Miller intended to shoot. That conclusion was bolstered by the fact that, after giving Miller the gun, Petitioner went to the back of the store and sheltered himself during the entire period of the shooting, demonstrating that he anticipated that shooting. In addition, Petitioner already had demonstrated a willingness to shoot someone, by showing his handgun and bragging about having a "Magic Johnson for anybody," meaning that he had a 32-shot capacity handgun and magazine. (T. Tr. VI, ECF No. 6-10, PageID.512-514.) Finally, Petitioner left the store only when Miller left, after most of the others had fled outside, demonstrating that he was acting in conjunction with Miller.

Taken together, the evidence leaves little room for any conclusion other than that Petitioner both understood and intended that Miller would fire the weapon at others in the store. As the Michigan Court of Appeals held, in order to prove the malice necessary for second-degree murder, the prosecutor had to prove "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and

willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." (Mich. Ct. App. Op., ECF No. 6-14, PageID.598 (quoting *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998).) The court of appeals reasonably concluded that the evidence and reasonable inferences from that evidence supported a finding that Petitioner was aware that Miller either intended to cause great bodily harm or death or intended to fire a weapon at others – an action showing a wanton and willful disregard of the tendency of the behavior to cause death or great bodily harm.

For all of these reasons, Petitioner fails to overcome the double deference owed to the state court's resolution of his various sufficiency claims. *Tucker*, 541 F.3d at 656; *Davis*, 658 F.3d at 534. I therefore recommend that Petitioner's first ground for habeas relief be denied.

## II.     Denial of Sentencing Departure

In his second ground for relief, Petitioner argues that the trial court erred in denying a downward departure from the sentencing guidelines, due to the fact that Petitioner had been shot and remained paralyzed following his exit from the store.

There is no constitutional right to individualized sentencing in non-capital cases. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy

enacted into statutes."). Since Petitioner has no federal right to an individualized sentence, this ground presents an issue of state law only. Petitioner has not alleged grounds for the Court to conclude that this is one of those rare instances where an alleged state-law sentencing error was so egregious that it led to a fundamentally unfair outcome. *See Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). Indeed, Petitioner utterly fails to argue that his sentence violates due process or is fundamentally unfair. He merely claims that the trial court should have extended greater leniency because of Petitioner's injuries. Such a claim is not cognizable on habeas review. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

## **Certificate of Appealability**

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.


Dated: July 17, 2018               /s/  Phillip J. Green
                                   PHILLIP J. GREEN
                                   United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).